IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E D

FEB 2 6 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| Walter Thomas Godbey, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12cv1302 (TSE/TRJ) |
| | ) | |
| Eric Wilson, et al., | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Walter Thomas Godbey, a federal inmate confined in the Eastern District of Virginia and

proceeding pro se, has filed a civil rights action, pursuant to Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Federal Tort Claims Act

("FTCA"), and other authorities, alleging that his rights have been violated by restrictions placed

upon his religious practices. The matter is now before the Court on defendants' Amended Motion

to Dismiss and Amended Motion for Summary Judgment. Plaintiff was provided with the notice

required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and

he filed a Supplemental and Amended Reply on July 12, 2013. Defendants submitted a reply to

plaintiff's pleading on August 6, 2013, and plaintiff filed a sur-reply and supporting affidavit on

August 30, 2013. On January 13, 2014, plaintiff filed a pleading captioned as a Supplemental

Motion Pursuant to Fed. R. Civ. P. 15, to which defendants filed a response in opposition on

January 15, 2014. After careful consideration of all of these materials, defendants' Amended

Motion to Dismiss and Amended Motion for Summary Judgment must be granted, and plaintiff's

claims must fail.

Also pending before the Court is plaintiff's Motion for Injunction Pursuant to Fed. R.

Civ. P. 65, in which he claims that prison officials have encumbered his inmate account

unlawfully. In response, defendants filed a Memorandum in Opposition to plaintiff's request and

supplied a supporting affidavit of the Trust Fund Supervisor of plaintiff's institution. Based on

the information contained therein, plaintiff's Motion for Injunction must be denied, as moot.

### I. Background

The following material facts are undisputed. Plaintiff Walter Godbey, an inmate confined

at FCI Petersburg, is serving a term of twenty-two (22) years imprisonment for a conviction of

voluntary manslaughter. Am. Compl. at 17; see Godbey v. Simmons, 1:11cv704 (TSE/TCB).

Godbey identifies himself as an adherent of the Asatru faith, and states that he has been such

since 2005.[1] Id. Defendant Eric Wilson is the Warden of FCI Petersburg. Id. at 4. Defendant

Michelle Fuseyamore was the Regional Counsel for the Mid-Atlantic Region of the Bureau of

Prisons ("BOP") from January 7, 2007 until December 29, 2012. Def. Ex. 2 at ¶ 2.

Plaintiff alleges in the amended complaint, which is the operative complaint in the

lawsuit, Dkt. 11, that defendants violated his rights by (1) refusing to allow him to drink

alcoholic mead during his religious ceremonies, and (2) forbidding him to wear his hlath, a

headband adorned with various runes or symbols worn by Asatru practitioners during their

religious ceremonies, outside of the institutional chapel. Plaintiff brings this action against

defendants in their individual capacities under Bivens and the FTCA, asserting that they have

---

[1]Asatru is "a polytheistic religion that originated in Northern Europe several centuries ago." Krieger v. Brown, 496 Fed. App'x 322, 323 (4th Cir. Nov. 8, 2012). Also known as Odinism or Wotanism, it has been described as a pagan "ancestral folk religion" or "nature-based faith" grounded in Norse mythology whose adherents "worship[] a variety of gods and goddesses." See Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599 (5th Cir. 2008); Lindell v. Houser, 442 F.3d 1033 (7th Cir.), cert. denied, 549 U.S. 853 (2006).

violated his First and Fifth Amendment rights[2] as well as the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb et seq.; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc et seq.; and 42 U.S.C. § 1983.   Plaintiff also sues defendants in their official capacities under the First and Fifth Amendments "solely for the purposes of the injunction." Am. Compl. at 2.

Some practitioners of the Asatru faith drink mead as part of their religious ceremonies. Def. Ex. 3 at ¶ 13.[3]  Mead is "a mixture of water and honey sometimes with fruit juice or spices and wine yeast." Plf. Aff. (Dkt. 12), Ex. 1 at 47.  The BOP prohibits inmates from consuming alcohol due to security concerns that increased violence otherwise might result. In addition, the prohibition of alcohol serves the penological concerns of furthering the rehabilitation of inmates with histories of substance abuse, deterring criminal behavior, and punishment.  Def. Ex. 3 at ¶¶ 14-16. The BOP permits the religious use of wine in instances where it is specifically mandated by religious law, such as during the Catholic Eucharist.  In such situations, however, only the clergyman is allowed to hold the chalice while inmates dip their communion wafers into the wine and then eat the wafers.  Inmates are never permitted to handle the sacramental wine themselves or to drink the wine directly.  Id. at ¶¶ 17, 19.  Asatru religious ceremonies involving mead

---

[2]In deference to plaintiff's pro se status, defendants appropriately have construed his Fourteenth Amendment Equal Protection Clause claims as arising under the Fifth Amendment's Equal Protection component. Def. Mem., n.1; see Bolling v. Sharpe, 347 U.S. 497, 498-500 (1954) (Fifth Amendment due process guarantee applies in suits against federal officials).

[3]Defendants' Exhibit 3 is the Declaration of Christopher Houston, a supervisory chaplain with the BOP who oversees the religious ceremonies and the provision of religious accommodations at FCI Petersburg.  He attests that he is personally familiar both with plaintiff's claims and with "the security concerns of the BOP and the religious accommodations that have been and can be made consistent with BOP policies that address those security concerns." Id. at ¶¶ 1-2.

require the participants to handle the mead themselves by toasting each other with the mead and then drinking the mead. Therefore, BOP cannot provide Asatru practitioners with any alcoholic alternative that would accommodate its security concerns in allowing inmates to handle and to drink alcohol. Id. at ¶ 21. As a result, it provides Asatru adherents with the honey and fruit juice mixture plaintiff describes as an alternative to alcoholic mead. Id.

In addition, BOP does not allow offenders to wear clothing or headgear with symbols throughout prisons because the symbols could be used as a means of covert communication among the inmate population for purposes such as identifying gang affiliations or ordering acts of violence against institutional staff or other inmates. Id. at ¶¶ 8-9. The hlath or head garment worn by Asatru adherents is a solid-colored headband containing one or more symbols or runes. There are twenty-four (24) symbols in the Asatru alphabet, each of which has a different religious significance and any of which may appear on the hlath. Id. at ¶¶ 4, 11. Each Asatru practitioner chooses the runes on his own hlath, so hlaths cannot be standardized for all prison inmates. Id. at ¶ 11. The BOP classifies hlaths as ceremonial religious headgear and allows their use in the prison chapel during ceremonies, but does not permit inmates to wear them throughout the rest of the institution. Id. at ¶¶ 5-6. Only religious handwear that is not adorned with non-standardized or alphabetic symbols may be worn throughout the prison. Id. at ¶ 10. The BOP cannot allow Asatru inmates to wear hlaths outside prison chapels and still accommodate the significant security concerns they raise. Id. at ¶ 12.

## II. Standards of Review

A. Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss those allegations that fail "to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570  (2007)).  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails.  Id. at 679.  In analyzing a complaint filed by a plaintiff who is proceeding pro se, however, a court is obliged to afford the allegations  generous construction.  Haines v. Kerner, 404 U.S. 519, 520 (1972);  Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

B. Rule 12(b)(1)

Federal district courts are courts only of the limited jurisdiction which is granted to them by the United States Constitution and statutes. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  When a district court lacks subject matter jurisdiction over an action, the action is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1).  Arbaugh v. Y&H Corp., 546 U.S. 500, 506-07 (2006).  In determining whether jurisdiction exists, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment ...." Richmond, Fredericksburg & Potomac Railroad Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  A Rule 12(B)(1) motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." AtlantiGas Corp. v. Columba Gas Transmission Corp., 210 Fed. App'x 244, 247 (4th Cir. 2006).

C. Rule 56

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that summary judgment is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

6

## III. Analysis

### A. RLUIPA and Section 1983 Claims

Plaintiff's claims pursuant to RLUIPA and § 1983 must be dismissed for failure to state a claim because those provisions provide remedies in federal court only against state actors. RLUIPA is the state-prison analog to RFRA.  42 U.S.C. § 2000cc-5(4)(SA); see Lebron v. Rumsfeld, 670 F.3d 540, 557 (4th Cir. 2012) ("Congress has thus created a parallel statutory scheme, using virtual identical language, in which RFRA continues to apply to the federal government and RLUIPA mirrors the provision of RFRA in suits against the states concerning ... institutionalized persons."), cert. denied, 132 S.Ct. 2751 (2012). Because plaintiff's claims here pertain exclusively to his incarceration in a federal prison and both named defendants are federal officials, he cannot bring his claims pursuant to RLUIPA.

A cause of action arises under § 1983 only where a plaintiff can show that he was deprived of rights Constitution or laws of the United States due to the conduct of a person acting under color of state law.  See West v. Atkins, 487 U.S. 42 (1988). Thus, "[federal officials] cannot be sued under § 1983, because they do not act under color of state law." Rodriguez v. Federal Bureau of Prisons, 2013 WL 819381 *1 (W.D. Va. Mar. 5, 2013), citing Harlow v. Fitzgerald, 457 U.S. 800, 814 - 20 (1982).  As neither of the named defendants can be sued pursuant to RLUIPA or § 1983, plaintiff's claims brought pursuant to those authorities must be dismissed for failure to state a claim pursuant Fed. R. Civ. P. 12(b)(6).

### B. FTCA Claims

Plaintiff's claims brought pursuant to the FTCA must be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  First, individual government officials may not be sued

under the FTCA; the only proper defendant is the United States of America. 28 U.S.C. §2674; see Iodice v. United States, 289 F.3d 270, 273 n.1 (4th Cir. 2002). Moreover, it would be futile in this case to allow plaintiff an opportunity to amend his complaint to add the United States as a party to the lawsuit because he alleges in substance only that his rights under the Constitution have been violated, and the "FTCA does not provide a remedy for constitutional torts." Ready Trans., Inc. v. Military Traffic Mgmt. Command, 86 Fed. App'x 561, 565 (4th Cir. Jan. 22, 2004); Williams v. United States, 242 F.3d 169, 175 (4th Cir. 2001) ("[A] federal constitutional tort cannot provide the source of law under the FTCA"). Thus, the FTCA provides no jurisdiction for this Court to entertain plaintiff's claims that his inabilities to use alcoholic mead in religious ceremonies and to wear his hlath at all times violate his rights under the First and Fifth Amendments.

In addition, the FTCA explicitly provides that "[n]o person convicted of a felony who is incarcerated ... while serving a sentence may bring a civil action against the United States or an ... officer or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 28 U.S.C. § 1346(b)(2). Here, as noted above, plaintiff's present incarceration stems from his conviction of the felony of voluntary manslaughter, and he seeks monetary relief in the amount of $20,000,000.00 for the claims he asserts. However, plaintiff does not allege that he suffered any physical injury as the result of defendants' actions; rather, he seeks compensation only for "the harms and mental anguish for not being able to properly commune [sic] with the Gods of [his] choosing...." Am. Compl. at 6. Plaintiff's claim for damages for "mental or emotional injury suffered while in custody without a prior showing of physical injury" is expressly forbidden under the FTCA, Stanley v. United

8

States, 2012 WL 6924168 *2 (N.D. W.Va. Oct. 24, 2012), as is his prayer for punitive damages. 28 U.S.C. § 2674; see Penn Millers Ins. Co. v. United States, 472 F.Supp.2d 705, 716 (E.D.N.C. 2007). Thus, plaintiff's FTCA claims must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R Civ. P. 12(b)(1).

C. RFRA and Bivens Claims

1. Plaintiff's Claims are Unexhausted

Defendants are entitled to summary judgment on plaintiff's claims for damages under RFRA and Bivens because plaintiff failed to exhaust his administrative remedies as to those claims. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Indeed, under the PLRA courts have no authority to waive the exhaustion requirement. See Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. Fe. 18, 2011). Moreover, the PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons with the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to pursue their claims further in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper

9

exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur *unless the grievant complies with the system's critical procedural rules.*" Id. at 95 (emphasis added); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. Woodford, 548 U.S. at 96. To prevent this type of abuse, this Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. Moore, 517 F.3d at 725, 729. And significant here, the Supreme Court expressly has refused to recognize a futility exception to the PLRA's exhaustion requirement. Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements [of the PLRA]".); see also, Reynolds v. Doe, 431 Fed. App'x 221, 222 (4th Cir. May 24, 2011)("Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile.")

For a federal inmate such as Godbey, BOP regulations 28 C.F.R. § 542.10 et seq. provide a multi-layered exhaustion process. Under BOP regulations, an inmate first is required to attempt to resolve the problem informally, but in the event this fails, the inmate must then file a formal written Administrative Remedy Attempt within twenty days of the incident in question. See 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the response provided, he can appeal the decision first to the warden of the particular facility (Level I), then to the appropriate

10

BOP Regional Director (Level II), and finally to the BOP General Counsel (Level III). See 28 C.F.R. §§ 542.10-542.15. Emergency grievances do not count as any part of the BOP process.

In this case, Godbey filed and exhausted an administrative tort claim pursuant to the FTCA, Am. Compl. at 5, Plf. Ex. 1, but that does not suffice to achieve exhaustion of his constitutional claims. The applicable regulations clearly provide a separate, distinct system for administrative exhaustion of an FTCA claim. See 28 C.F.R. § 542.10(c). Thus, "exhaustion of [an] FTCA claim provides no comfort [in a Bivens action] in that the exhaustion requirements concerning FTCA and Bivens actions differ." Pardum v. Johns, 2011 WL 5117574 (E.D.N.C. Oct. 25, 2011). Accordingly, Godbey's exhaustion of his FTCA claim did not accomplish exhaustion of his RFRA and Bivens claims.

At the time Godbey filed his amended complaint in this action, he had barely commenced, but then promptly abandoned the administrative exhaustion of his constitutional claims. Attached as an exhibit to the amended complaint is an undated letter, which defendants acknowledge may have been an informal administrative remedy request that Godbey allegedly sent to his "Unit Team and others Concerned" at FCI Petersburg and the Mid-Atlantic Regional Director's Office. In it, Godbey complained about his inability to wear his hlath at will and to be provided with alcoholic mead. Plf. Ex. 1 at 8-10. Although BOP has no record of having received this letter,[4] it may fairly be construed as Godbey's attempt to resolve his complaints informally, as required by 28 C.F.R. § 542.13.

In March 2011, plaintiff filed a Request for New or Unfamiliar Religious Components, which is not a step in the prescribed administrative exhaustion process. Plf. Ex. 1 at 8-10, 19-22.

---

[4]See Def. Ex. 1 at ¶ 5.

Warden Wilson denied plaintiff's request on September 1, 2011, and expressly informed him that he could "appeal this decision through the Administrative Remedy Process." Yet, Godbey thereafter failed to file an official administrative request before initiating this lawsuit. Plf. Ex. 1 at 11; Def. Ex. 1 at ¶5, Att. 2. To be sure, he addressed additional correspondence to a chaplain in the Mid-Atlantic Regional Center, who also advised him to submit an administrative claim, but Godbey again simply ignored this advice. Plf. Ex. 1 at 16-25; Def. Ex. 1 at ¶ 5, Att. 2. Here, plaintiff attempts to justify his admitted failure to pursue administrative remedies by declaring, "I was told 'no' in writing from [Warden Wilson's] office. I don't need to ask 1,000 times." Am. Compl. at 10. However, plaintiff's apparent attempt to invoke a futility exception to the exhaustion requirement is legally irrelevant, Booth, 532 U.S. at 741 n. 6, and his failure to begin, much less to complete, the administrative process after being advised twice by BOP officials that he must do so is fatal to his constitutional claims. Graham, 413 Fed. App'x at 663.

In what can only be interpreted as a tacit admission that defendants' position on this issue is correct, plaintiff undertook to achieve administrative exhaustion of his claims after defendants moved for summary judgment for his failure to do so.[5] Thus, on January 13, 2014 - over a year after the initial complaint in this action was filed in November, 2012 - Godbey submitted a document captioned as a Supplemental Motion Pursuant to Fed. R. Civ. P., Rule 15. Dkt. 45. In it, Godbey alleges that he exhausted his administrative remedies as of December 16, 2013. Id. Assuming without deciding that this is true, it occurred much too late to have any effect on plaintiff's present claims, because it is well settled that "prisoners must exhaust 'such

---

[5]Defendants filed their motions to dismiss and for summary judgment on June 7, 2013, Dkt. 24 - 26; Godbey's Inmate Request to Staff is dated June 11, 2013. Dkt. 45, Ex. 8.

administrative remedies as are available' **prior to** filing suit in federal court." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008), emphasis added; see also, Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of that statute makes exhaustion a precondition to filing an action in federal court. The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); McCoy v. Harrison, 2012 WL 6561712 at *4 (E.D. Va. Dc. 14, 2012)(exhaustion after the filing of a complaint does not satisfy the PLRA). Thus, Godbey's attempt to salvage his claims after the commencement of this action was futile, and his Supplemental Motion must be denied.

### 2. Plaintiff's Claims Are Without Merit

In the alternative, even if plaintiff's constitutional claims had been properly exhausted, it is apparent that they would fail on the merits for several reasons.

### a. Plaintiff Cannot Recover Monetary Damages in the Absence of Physical Injury

As with his claims brought pursuant to the FTCA, plaintiff's attempt to recover monetary damages under RFRA and Bivens fail because he is an incarcerated felon and has not alleged that he suffered any physical injury as the result of the conduct he challenges. 42 U.S.C. § 1997e(e); see Tsosie v. Garrett, 409 Fed. App'x 262, 263 (11th Cir. Nov. 29, 2010)(affirming dismissal of prisoner's Bivens claims where he failed to allege physical injury, as required by §1997e(e)), cert. denied, 132 S.Ct. 466 (2011).

### b. Defendants Are Entitled to Qualified Immunity

Government officials preforming discretionary functions generally are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.

The "threshold question" in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts show [that] the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., see also, Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002). If the facts alleged do show a constitutional violation, "the next step is to ask whether the constitutional right was clearly established in the specific context of the case. Figg, 312 F.3d at 365. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202, quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "Under the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" Figg, 312 F.3d at 636, quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). To overcome the "clearly established" hurdle, Godbey would have to show that "precedent, either from the Supreme Court, the circuit in which the case aries, or a consensus of cases from other circuits, provides the officer in question with fair notice that he actions he took, given the facts with which he was presented, did not comport with constitutional norms." Altman v. City of High Point, 330 U.S. 194, 210 (4th Cir. 2003). On the other hand, if "officers of reasonable competence could disagree" on the constitutionality of the conduct at issue, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986).

14

c. <u>RFRA</u>

The BOP's policies of providing Asatru adherents with fruit juice as a substitute for alcoholic mead and restricting their opportunities to wear the hlath only to religious ceremonies do not violate any clearly-established statutory right. RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." To establish a claim under RFRA, then, a plaintiff must show that defendant's action (1) substantially burdens (2) plaintiff's sincere religious exercise. <u>Gonzales v. O Centro Espirita Benficente Uniao do Vegetal</u>, 546 U.S. 418, 428 (2006). If he does so, the burden shifts to defendant to show that the application of the burden to plaintiff (1) furthers a "compelling governmental interest" and (2) is the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000bb-1(b). A "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" <u>Lovelace v. Lee</u>, 472 F.3d 174, 187 (4th Cir. 2006). "On the opposite end of the spectrum ... a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." <u>Adkins v. Kaspar</u>, 393 F.3d 559, 570 (5th Cir. 2004).

Here, the BOP policies at issue do not substantially burden Godbey's religious exercise. Both are facially neutral, since they apply to all faiths. Def. Ex. 3 at ¶¶ 8-10, 14-19. They do not impose a substantial burden on Godbey's practice of his Asatru faith.   Plaintiff's own exhibits demonstrate that although he was incarcerated in 2002, he did not begin to practice Asatru until 2005. Plf. Ex. 1 at 2. Thus, because plaintiff has never practiced Asatru other than by using non-

15

alcoholic mead and restricting the wearing of his hlath only to religious services, the policies at issue cannot have compelled him to modify his behavior. Def. Ex. 1 at ¶ 4. Nor have they forced him to "abandon[] one of the precepts of [his] religion." Cf. Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). One of plaintiff's own exhibits states that while "[m]ost modern Asatruar make their sacrifice symbolically with alcoholic drink ... [a]n acceptable alternative for incarcerated Asatruar would be to use fruit juice, or a non-fermented mixture of water, honey and fruit juice." Plf. Ex. 1 at 39. Indeed, the founder of Asatru has defined mead as "a mixture of water and honey" that only "sometimes" includes "fruit juices or spices and wine yeast." Id. at 47. Thus, BOP's provision of honey and fruit juice instead of alcoholic mead does not substantially burden Godbey's religious exercise. Similarly, plaintiff fails to establish that the BOP policy of requiring that hlaths be worn only in the prison chapel substantially burdens his religious practices.[6] Thus, plaintiff fails to state a claim for relief under RFRA.

Further, even if plaintiff had managed to show that either or both of the policies he challenges substantially burdened his religious exercise, defendants have established that the polices further several compelling penological interests. Thus it is clear that "[a]lcohol use in prison presents a serious threat to the security of BOP facilities because inmates are susceptible to becoming violent when under the influence of alcohol [and] prison populations contain higher incidence of persons with histories of violence than normally found in society at large,." Def. Ex. 3 at ¶ 15. In addition, it is equally clear that "[p]recluding alcohol is ... important to the safety of the work environment of BOP employees [because a] staff member may be placed in a very

---

[6]Plaintiff likens the wearing of a hlath to "placing an amplifier on between [himself] and the Gods." According to plaintiff, the runes on the hlath "act as an antenna" and "double[] the individual connection to the Gods and the 3 Norns." Am. Compl. at 18.

dangerous situation when required to control an area in which inmates are drinking alcohol ...
[because it could] result in disruptive and assaultive behavior among inmates and possibly staff."
Id. at ¶ 16. Although Asatru rituals require participants to handle mead personally, the BOP's
practice of providing a non-alcoholic substitute is the least restrictive alternative that furthers
these compelling penological interests.

Similarly, the BOP policy of requiting uniformity of inmates' headgear and clothing
"reduce[s] the targeting of individuals, groups, or sects for violence ad/or harassment by other
inmates or groups of inmates." Id. at ¶ 9. Further, the requirement that clothing or headgear be
free of symbols prevents inmates from using symbols to communicate in ways that evade BOP's
monitoring about such topics as gang affiliations or ordering acts of violence against fellow
inmates or staff members. Id. Since hlaths by definition contain symbols, id. at ¶ 4, limiting the
environment where they may be worn to the prison chapel is the least restrictive means to further
these important penological interests. Id. at ¶ 12.

Accordingly, because the BOP policies at issue do not substantially burden plaintiff's
exercise of his Asatru faith, and because the preclusion of alcoholic mead and restriction of hlath
use to the prison chapel serve to further compelling penological interests, defendants have not
violated plaintiff's rights under RFRA. Moreover, plaintiff's alleged rights to imbibe alcoholic
mead and to wear his hlath at all times are not clearly established by any decisional authority in
this or any other circuit. Accordingly, even if defendants in following the policies at issue had
impinged on plaintiff's rights under RFRA, they would be entitled to qualified immunity because
no clearly-established law provided them with notice that their actions were unconstitutional. See
Wilson v. Layne, 526 U.S. 603, 618 (1999).

d. First Amendment

Plaintiff's claim that the BOP's refusal to allow him to use alcoholic mead or to wear his hlath at all times violated his rights under the First Amendment fares no better. The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). However, as with a claim arising under RFRA and RLUIPA, a prisoner asserting a First Amendment free exercise claim must demonstrate that defendant's conduct has substantially burdened his religious exercise. Whitehouse v. Johnson, 2011 WL 5843622 (E.D. Va. Nov. 18, 2011) at *5. Moreover, the "First Amendment affords less protection to inmates' free exercise rights that does RLUIPA [or RFRA]. Lovelace, 472 F.3d at 199-200; see also, Lord Versatile v. Johnson, 2011 WL 5119259 at *4 (E.D. Va. Oct. 27, 2011) ("RLUIPA [or RFRA] provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States.").[7] Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA [or RFRA] to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." Van Wyhe v. Reisch, 581 F.3d 639, 657-58 (8th Cir 2009). Accordingly, for the reasons discussed above in connection with Godbey's RFRA claim, defendants are entitled to summary judgment on his free exercise claim as well.

---

[7]It is established that "[b]ecause of the close connection in the purpose and language between [RLUIPA and RFRA], courts commonly apply case law decided under RFRA to issues that arise under RLUIPA and vice versa." Lebron, 670 F.3d at 557.

18

e. Fifth Amendment

"To state a Fifth Amendment claim for violation of equal protection, plaintiff must allege

facts sufficient to show that he was treated differently from other 'similarly situated' inmates and

the 'unequal' treatment resulted from either intentional or purposeful discrimination." Harrison

v. Watts, 609 F.Supp.2d 561, 567 (E.D. Va. 2009), citing Morrison v. Garraghty, 239 F.3d 648,

654 (4th Cir. 2001). If a plaintiff does not make a threshold showing of disparate treatment, the

court need not assess whether the treatment can be justified under the appropriate level of

scrutiny. Morrison, 239 F.3d at 655; see also, Ephraim v. Angelone, 313 F. Supp. 2d 569, 573-

74 (E.D. Va. Mar. 3, 2003), aff'd, 68 Fed. App'x 460 (4th Cir. June 27, 2003), cert. denied, 540

U.S. 1121 (2004)..

Here, Godbey's claim of denial of his right to equal protection does not get past the first

hurdle. When plaintiff was denied the use of alcoholic mead and the ability to wear his hlath

throughout the prison, he was treated no differently from other similarly situated individuals. No

inmates are allowed to handle alcohol themselves, even during religious ceremonies. Def. Ex. 3

at ¶ 19. Nor are any inmates allowed to imbibe alcohol. Id. And, no inmates are permitted to

wear headgear adorned with any non-standardized or alphabetic symbols outside the prison

chapel. Id. at ¶ 10. Because BOP officials treated plaintiff no differently in these regards than

any other similarly situated inmates, plaintiff's rights under the Fifth Amendment were not

abridged.[8]

---

[8]Plaintiff's assertion that Catholic inmates' use of sacramental wine amounts to disparate
treatment from Asatruar inmates misses the mark. Am. Compl. at 8. As noted above, the use of
wine at Catholic Mass is required by religious law, while Asatru doctrine contains no corresponding
mandate. Compare Def. Ex. 3 at ¶ 17 with Plf. Ex. 1 at 39, 47. Second, Catholic inmates never
personally handle or imbibe the sacramental wine, and instead are permitted only to eat a

f. Plaintiff's Claims for Injunctive Relief

In addition to monetary damages, plaintiff also seeks injunctive relief with respect to the

RFRA and constitutional claims. Because the defendants here are sued in their official

capacities, they are not entitled to qualified immunity on those claims. See Ridpath v. Bd. of

Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (qualified immunity defense is not

available in an official-capacity suit brought against a government entity or officer), citing

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Nonetheless, the same statutory and

constitutional analyses explained above apply to demonstrate that plaintiff is not entitled to

injunctive relief on his claims because his constitutional and statutory rights have not been

violated.

### IV. Plaintiff's Motion for Injunction

Until recently, in addition to this action Godbey also had pending before this Court the

case of Godbey v. Simmons, Case No. 1:11cv704 (TSE/TCB), in which he also was granted

leave to proceed in forma pauperis. On November 27, 2103, Godbey submitted a motion for

injunctive relief to preclude officials at FCI Petersburg from allegedly continuing to deduct more

than twenty percent of his previous month's deposits from his inmate trust account to satisfy his

filing fee obligations in the two actions. Dkt. 43. On December 6, 2013, defendants filed a

---

communion wafer that has been dipped in wine held by a priest. Def. Ex. 3 at ¶ 18. In contrast, according to plaintiff, Asatru adherents must pour mead into a horn, and "each person makes a toast to the appropriate God or Goddess and then takes a drink from the horn." Am. Compl. at 17. Thus, because Asatruar inmates must personally handle and imbibe the mead used in their religious ceremonies, they are not similarly situated to Catholics. Nor, contrary to plaintiff's arguments, are Asatruar treated differently with regard to their headwear. Am. Compl. at 19. The only inmates who are allowed to wear religious headwear throughout the prison are those whose headwear does not contain alphabetic symbols. Def. Ex. 3 at ¶¶ 10-11. No inmates are permitted to wear headwear adorned with personalized, non-standard or alphabetic symbols outside the prison chapel. Id.

memorandum in opposition, supported by the affidavit of Kevin Whitley, the Trust Fund

Supervisor at FCI Petersburg. Dkt. 44, Ex.1. Mr. Whitley states that as of December 4, 2013,

the institution's accounting procedures were adjusted so that a maximum of twenty percent is

deducted from Godbey's account each month and is applied only to the filing fee balance

remaining in Case No. 1:11cv704. Once that debt is paid in full, the deductions will be applied to

the filing fee for the instant action. Id. Since this is precisely the relief plaintiff requests in the

Motion for Injunction, the motion will be denied, as moot.

### V. Conclusion

For the foregoing reasons, plaintiff's claims brought pursuant to 42 U.S.C. §1983 and

RLUIPA must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). His claim

brought pursuant to the FTCA must be dismissed for lack of jurisdiction pursuant to Rule

12(b)(1). Summary final judgment must be entered in defendants' favor on plaintiff's claims

brought pursuant to RFRA and Bivens. And plaintiff's Motion for Injunction must be denied, as

moot, and his Supplemental Motion Pursuant to Fed. R. Civ. P. 15 must be denied. An

appropriate Order shall issue.

Entered this _26th_ day of _February_ 2014.

Alexandria, Virginia

/s/
_____
T. S. Ellis, III
United States District Judge